

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-12-00147-CR

---

DAVID CHARLES DAVIDSON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 102nd District Court
Red River County, Texas
Trial Court No. CR01451

---

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

After having pled guilty to possession of less than one gram of methamphetamine, David Charles Davidson was placed on deferred adjudication community supervision for two years in January 2010.[1] In November 2010, Davidson's guilt was adjudicated and he was sentenced to two years' incarceration, probated for a period of five years. After Davidson refused to submit to drug testing and a firearm was discovered at his residence, Davidson's community supervision was revoked, and he was sentenced to two years' incarceration. We affirm the judgment of the trial court.

## I.    Background—the Revocation Hearing

The State moved to revoke Davidson's community supervision, based on the allegations that (1) Davidson violated the terms of his community supervision by committing the offense of felon in possession of a firearm on June 8, 2012, and (2) Davidson refused to submit to a drug screen on June 8, 2012. Davidson pled "not true" to each allegation.

Testimony at the revocation hearing revealed that on June 7, 2012, an armed robbery occurred in Bogata, Texas, and the investigation of that robbery pointed to Davidson as a suspect. Accordingly, Bogata Police Chief David Short planned to speak with Davidson on the morning of June 8. When Short was unable to locate Davidson, he contacted Staci Moore,

---

[1]The State filed its first motion to proceed with adjudication in September 2010. Davidson pled "true" to the allegations in the motion, and a judgment adjudicating guilt was entered in November 2010.

Davidson's community supervision supervisor,[2] to assist in locating Davidson. Moore was able to provide Short with an address for Davidson.

When Short arrived at Davidson's residence—a travel trailer located near his father's home—he noticed the main door was open, but the screen door appeared to be closed. Short approached the screen door, heard a radio playing, and noticed the windows were open. When Short knocked on the screen door, the door rolled open, affording Short a view of the inside of the trailer. It was apparent Davidson was not home. Even though Short did not enter the trailer, he saw a rifle in plain view inside, to the left of the door.[3]

Short obtained an evidentiary search warrant for Davidson's residence pursuant to Article 18.02(10) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 18.02(10) (West 2005).[4] At some point during the day, the rifle was allegedly removed from the camper trailer. After having returned to the Davidson property with the search warrant, Short discovered the rifle—previously located in the trailer—a few feet away underneath a storage unit. Davidson was never arrested for the armed robbery.

---

[2]Moore is employed by the community supervision department of Red River County and was Davidson's supervisor. Davidson was serving his five-year probationary term for possession of methamphetamine at the time of the robbery.

[3]Because a handgun was allegedly used in the robbery, Short was not concerned that the rifle was evidence of Davidson's involvement in the robbery. Short was advised by a potential witness that Davidson was seen earlier that morning on a bicycle headed "that direction" in dark clothing, right after the robbery. Short was able to see dark clothing of some sort through a window in Davidson's trailer.

[4]Article 18.02(10) provides that a "search warrant may be issued to search for and seize" "property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense." TEX. CODE CRIM. PROC. ANN. art. 18.02(10). Short testified that he was looking for dark coveralls, a blue bicycle, a pair of brown cotton gloves, a dark mask designed to cover the face, a black semiautomatic pistol, and a white zipper bag.

When Moore was advised that Davidson was a robbery suspect, she decided to make a home visit on June 8.[5] Davidson was home when Moore arrived at his residence, but indicated that he was unable to comply with Moore's request for a drug screen. After Moore completed the home visit, Davidson was arrested for the offense of being a felon in possession of a firearm. Davidson's arrest was unrelated to the robbery.

Later that afternoon, Moore received a telephone call from the Bogata Police Department advising that they were transporting Davidson to the police department. Moore met Davidson at the police department and again requested a drug screen. Davidson refused. Moore then advised Davidson that failure to submit to a drug screen was a violation of the terms of his community supervision and that such refusal is considered a positive urinalysis. Davidson indicated he understood and signed a form refusing to submit to a urinalysis.[6]

At the conclusion of the revocation hearing, the trial court found that Davidson violated the terms of his community supervision by committing the offense of felon in possession of a firearm on June 8, 2012, in Red River County, Texas. Additionally, the trial court found that Davidson violated the terms of his community supervision by failing to abstain from the possession or use of any controlled substance, narcotic, dangerous drugs, inhalants or prescription drug without first obtaining a prescription from a licensed physician when Davidson refused to provide a urine sample on June 8, 2012.[7]

---

[5]Davidson lives three to four miles outside of Bogata.

[6]The drug-screen request form, marked "Refused to Submit," is signed by Davidson and dated June 8, 2012.

[7]One of the conditions of community supervision was that Davidson must "submit [a] urine, blood, or saliva sample to the Community Supervision Officer in charge of [his] case at anytime requested . . . ."

## II. Davidson Failed to Preserve Issue of Magistrate's Authority to Issue Warrant

By his appeal, Davidson contends (1) the State did not prove that the municipal judge issuing the search warrant was a judge of a municipal court of record as required by Article 18.01(c) of the Texas Code of Criminal Procedure, and (2) even assuming the magistrate was authorized to issue the warrant, he was not authorized to issue a warrant to be executed outside the boundaries of the municipality.[8]  Based on the alleged impropriety of the search warrant, Davidson contends the evidence discovered as a result of the improper warrant—a firearm located on his property and evidence of his refusal to submit to a drug screen—cannot support revocation.  We disagree.

At the outset, we examine the issue of error preservation.  At the revocation hearing, Davidson complained that the search warrant was not supported by probable cause, but did not complain that the magistrate lacked authority to issue the warrant.[9]  Davidson further complained that the evidence—the rifle and evidence of refusal to submit to a drug screen—was obtained by trespassing on Davidson's property, and, thus, Davidson's Fourth Amendment rights were violated.  This complaint was not advanced on appeal.

To preserve error for appellate review, the complaining party must make a timely objection specifying the grounds for the objection if the grounds are not apparent from the context.  Further, the objection must be made at the earliest possible opportunity, and the

---

[8]The issue of whether the magistrate was authorized to issue a warrant outside of the municipality of Bogata is addressed in a later section of this opinion.

[9]The trial court questioned the validity of the search warrant because it was not signed by a state judge.  The State countered that a magistrate "in a county like Red River . . ." could validly sign the warrant.  Davidson's objection was that the magistrate was not authorized to issue a warrant outside of the  municipal limits.

complaining party must obtain an adverse ruling from the trial court. *See* TEX. R. APP. P. 33.1(a)(1); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). An objection based on one legal theory may not be used to support a different legal theory on appeal. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Moreover, Davidson failed to file a motion in connection with the revocation proceeding to suppress the evidence he claims was obtained as a result of the allegedly invalid search warrant. Davidson's claim that the magistrate lacked general authority to issue the search warrant was not preserved for review.

Even assuming error preservation, Davidson failed to prove that the magistrate was unauthorized to issue the warrant. The warrant in question was signed by Mark Whitehouse, Municipal Judge of Bogata, acting as Red River County Magistrate. Davidson contends that because Whitehouse was a municipal judge, he had no authority to issue the warrant. Article 18.01(c) of the Texas Code of Criminal Procedure sets forth the applicable Code provision upon which Davidson bases his argument and states, in pertinent part:

> Except as provided by Subsections (d), (i), and (j), only a judge of a municipal court of record or a county court who is an attorney licensed by the State of Texas, a statutory county court judge, a district court judge, a judge of the Court of Criminal Appeals, including the presiding judge, a justice of the Supreme Court of Texas, including the chief justice, or a magistrate with jurisdiction over criminal cases serving a district court may issue warrants under Article 18.02(10).

TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (West Supp. 2012). Davidson complains that even though a municipal judge is a magistrate,[10] only a judge of a municipal court of record may issue

---

[10]*See* TEX. CODE CRIM. PROC. ANN. art. 2.09 (West Supp. 2012).

a warrant under Article 18.02(10).[11] Article 18.01(i) of the Texas Code of Criminal Procedure provides an exception to the requirement that a warrant issue from a municipal court of record:

> (i) In a county that does not have a judge of a municipal court of record who is an attorney licensed by the state, a county court judge who is an attorney licensed by the state, or a statutory county court judge, any magistrate may issue a search warrant under Subdivision (10) or Subdivision (12) of Article 18.02 of this code. This subsection is not applicable to a subsequent search warrant under Subdivision (10) of Article 18.02 of this code.

TEX. CODE CRIM. PROC. ANN. art. 18.01(i) (West Supp. 2012). Davidson claims this exception does not apply because the record is devoid of evidence showing Red River County is a county covered by this exception, and determining whether the exception applies would require evidence regarding matters outside the record. In *Proctor v. State*, 356 S.W.3d 681 (Tex. App.—Eastland 2011, pet. ref'd), the court rejected a similar argument, where the appellant acknowledged the existence of the exception but asserted, "There is nothing within the record which shows the applicability of the exception." *Id*. at 686. The court recognized that

> [t]he burden of proof in a hearing on a defendant's motion to suppress is initially upon the defendant. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). When no objection is made, a presumption exists that the judge acted properly in the regular discharge of his duties. *Zarychta v. State*, 44 S.W.3d 155, 165 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Because Proctor offered no evidence during the hearing to show that the county court judge who issued the warrant was without authority to do so, he did not overcome the presumption that the judge acted within his authority to issue the warrant. *Id*. Proctor's contention regarding the county court judge's authority to issue the warrant is overruled.

*Id.* at 686–87. The same rationale applies here. That is, Davidson offered no evidence to show that the municipal judge who issued the warrant was without authority to do so. Davidson,

---

[11]Various other judges, not at issue here, are authorized to issue warrants pursuant to Article 18.01(c).

7

therefore, failed to overcome the presumption that the judge acted within his authority to issue the warrant.

## III. Sufficient Evidence Supports the Trial Court's Judgment

We review the trial court's decision to revoke community supervision for an abuse of discretion. *Meyer v. State*, 366 S.W.3d 728, 729 (Tex. App.—Texarkana 2012, no pet.). When the revocation order is supported by a preponderance of the evidence, the trial court does not abuse its discretion. *Id.* at 729–30 (citing *Lively v. State*, 338 S.W.3d 140, 143 (Tex. App.—Texarkana 2011, no pet.). We review the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). If a single ground for revocation is supported by a preponderance of the evidence and is otherwise valid, then an abuse of discretion is not shown. *Lively*, 338 S.W.3d at 143. We must respect the trial court's role in evaluating witness credibility, resolving conflicts in the evidence, and in drawing reasonable inferences from the evidence. We must assume the trial court resolved evidentiary issues in a way that supports the judgment. *Meyer*, 366 S.W.3d at 730.

### A. Felon in Possession of a Firearm

Davidson does not contest that the firearm observed inside his camper trailer was in his possession during the time he was on community supervision.[12] Likewise, he does not contest the fact that he refused to submit to a drug screen. Instead, Davidson complains that evidence of these violations resulted from a faulty search warrant and that the violations, therefore, do not

---

[12]A person who has been convicted of a felony offense commits an offense if the person possesses a firearm at any location until five years after the person has been released from community supervision, parole, or mandatory supervision. After the five-year period has expired, such person may possess a firearm at the premises where the person lives. TEX. PENAL CODE ANN. § 46.04(a)(1)–(2) (West 2011). This offense occurred while Davidson was on community supervision.

support revocation. We disagree with the premise on which Davidson bases his argument—that the firearm and evidence of his refusal to submit to a drug screen were obtained in connection with the execution of the search warrant. In fact, Short lawfully observed the firearm in the trailer before the search warrant was requested or executed.

Nothing prevents a police officer from addressing questions to citizens on the street. Likewise, nothing prevents a police officer from approaching and knocking upon the front door of a home. *Cornealius v. State*, 900 S.W.2d 731, 733 (Tex. Crim. App. 1995) (citing *Rodriguez v. State*, 653 S.W.2d 305, 307 (Tex. Crim. App. 1983)). This is so because a police officer has the same right as any other person to enter onto residential property and walk up to the front door. *Id*. at 733–34 (citing *Bower v. State*, 769 S.W.2d 887, 897 (Tex. Crim. App. 1989), *overruled on other grounds*, *Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991)).

Short went to Davidson's residence to speak with Davidson about an armed robbery which occurred on the previous evening. When Short arrived, he approached the front door of Davidson's residence, a travel trailer. Short was within his rights to peaceably approach Davidson's door. *See id.*; *see also Buchanan v. State*, 129 S.W.3d 767, 772 (Tex. App.—Amarillo 2004, pet. ref'd) ("[P]olice have the same right as any other person to enter onto residential property and walk up to the front door[.]").

In the present case, the trailer had a screen door and a "regular hard door." When Short approached the trailer, he noticed that the front door was open, but the screen door appeared to be in the closed position. Short also was within his rights to knock on the screen door. *See Cornealius*, 900 S.W.2d at 733; *see also Duhig v. State*, 171 S.W.3d 631, 635 (Tex. App.—

9

Houston [14th Dist.] 2005, pet. ref'd) (absent express orders from person in possession of property not to trespass, anyone, including law enforcement officer, may approach front door of residence and knock). When Short knocked on the screen door of Davidson's trailer, the door rolled open, affording Short a view of the inside of the trailer, where he observed a rifle in plain view to the left of the front door. The trial court made a finding of fact that Short knocked on the door of Davidson's trailer, which was open except for the screen door, and observed a .22 caliber rifle inside the camper. Further, Davidson did not answer the knock. We give deference to this factual finding.

While rightfully at Davidson's front door, Short was free to observe evidence in "plain view." *Duhig*, 171 S.W.3d at 636 ("What a person knowingly exposes to the public, even in his own home, is not a search subject to Fourth Amendment protection[.]"). Nothing in the record suggests that Short intentionally opened the screen door to Davidson's trailer. When Short knocked and the door rolled open, observation of the rifle inside the trailer was not a search. *See id.* at 636–37. The trial court, therefore, correctly concluded that Short did not violate Davidson's Fourth Amendment right against unlawful search and seizure and that Short could see the rifle in "plain view" when he knocked on Davidson's screen door.[13]

Moreover, discovery of the rifle inside Davidson's trailer did not result from execution of the search warrant issued by Magistrate Whitehouse.[14] Only after leaving Davidson's residence

---

[13]Officer David Jernigan testified that he assisted Short in the investigation and saw a rifle inside Davidson's travel trailer. Jernigan further testified that Deputy Quinton Wallace of the Red River County Sheriff's Office observed the rifle inside Davidson's trailer.

[14]Short also observed what he believed to be evidence of the robbery inside Davidson's trailer—dark coveralls or dark clothing of the type the robber was allegedly wearing on the preceding evening.

did Short seek to obtain a search warrant. The warrant itself makes no mention of a rifle, as a rifle was not reported to have been used in the robbery.[15] Because Short observed the rifle in plain view, such observation was not a search. The testimony of Short and Jernigan established, by a preponderance of the evidence, that a rifle was located in Davidson's travel trailer at a time he was actively serving community supervision. Jernigan further testified that when Davidson arrived at his residence, prior to the execution of the search warrant, Davidson admitted to the presence of a firearm in the camper trailer. Officer Jacob Stinson placed Davidson under arrest for being a felon in possession of a firearm.

The trial court acted within its discretion in concluding that Davidson violated the terms and conditions of community supervision by possessing a firearm as set out in Section 46.04(a)(1) of the Texas Penal Code. TEX. PENAL CODE ANN. § 46.04(a)(1). This conclusion is independent of any issue regarding the validity of the search warrant.[16]

---

[15]The search warrant authorized seizure of a pair of dark coveralls, a blue bicycle with a light equipped to the front handlebars, a pair of brown cotton gloves, a dark mask designed to cover the face, a black semi-automatic pistol, a white zipper bag commonly used for carrying money (referred to as a bank bag), and any illegal contraband found within the scope of the search. Short testified that because a handgun was allegedly used in the robbery, he was not interested in the rifle when he discovered it inside the trailer. Neither the affidavit in support of the search warrant nor the search warrant mentioned the rifle. The fact that a rifle (which, according to Short, was the same rifle that he observed inside the trailer) was recovered from underneath a shed next to the trailer when officers executed the warrant has no bearing on the fact that Short and Jernigan testified that a rifle was located inside the trailer earlier in the day.

[16]Davidson also complains that the warrant was invalid because it exceeded the scope of the Magistrate's jurisdiction. While this issue is not germane to the trial court's findings that Davidson violated the terms and conditions of his community supervision by possessing a firearm and in refusing to submit to a drug screen, it is nevertheless incorrect. Davidson claims that the warrant is invalid because it ordered a search outside the city limits of Bogata and, therefore, beyond the jurisdiction of the Bogata municipal court. Judges of city courts of incorporated cities and towns are magistrates. TEX. CODE CRIM. PROC. ANN. art. 2.09. No issue concerning the status of the City of Bogata has been presented. The evidence shows the city employs a city judge and a chief of police. It is located in Red River County. The jurisdiction of a magistrate is coextensive with the limits of the county in which it sits. *See Gilbert v. State*, 493 S.W.2d 783, 784 (Tex. Crim. App.1973). A justice of the peace is

11

## B.    Refusal to Submit to Drug Screen

Davidson claims—as previously discussed—that the search warrant was improper. He further contends that the revocation was based on the allegation that he violated the conditions of his community supervision by possessing a firearm seized by law enforcement officers when they searched his property and that he refused a drug test after having been arrested for felon in possession of a firearm. He further reasons that had he not been jailed for this offense, he would not have been in a position to refuse Moore's request for a drug screen. Thus, he claims, evidence of this refusal will not support revocation. For the reasons previously discussed, the record does not support the conclusion that the search warrant was invalid.

Aside from this issue, Moore testified that Davidson was required to submit to a drug screen upon request. After his arrest, Davidson refused to comply with Moore's request for a drug screen. Thereafter, Davidson was advised that the failure to submit was a violation of the terms of his community supervision, and such refusal is considered a positive urinalysis. Davidson indicated that he understood and signed a form refusing to submit to a urinalysis. The trial court acted within its discretion in finding that Davidson violated the terms and conditions of community supervision in refusing to submit to a drug screen.

---

a magistrate, just as a municipal judge is a magistrate. TEX. CODE CRIM. PROC. ANN. art. 2.09. "[T]he jurisdiction of a justice of the peace, when acting as a magistrate, is coextensive with the limits of his county."); *see also Ex parte Clear*, 573 S.W.2d 224, 228 (Tex. Crim. App. 1978) (orig. proceeding); *Bitner v. State*, 135 S.W.3d 906, 907 (Tex. App.—Fort Worth 2004, pet. ref'd). In light of this precedent, the jurisdiction of the municipal judge of the City of Bogata, when he acted as a magistrate in issuing a search warrant, was "coextensive with the limits of his county." *Gilbert*, 493 S.W.2d at 784; *Klepper v. State*, No. 05-02-01283-CR, 2003 Tex. App. LEXIS 9570, at *7 (Tex. App.—Dallas Nov. 12, 2004, pet. ref'd) (mem. op., not designated for publication) (judges of incorporated cites are magistrates and have jurisdiction coextensive with limits of county in which city sits).

## IV.      Conclusion

We affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted:      January 10, 2013
Date Decided:        February 8, 2013

Publish