**AFFIRM; and Opinion Filed May 2, 2013.**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

No. 05-11-00820-CR
No. 05-11-00821-CR

**SAMUEL MONCADA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause Nos. F09-72070-H & F09-72067-H**

**OPINION**

Before Justices FitzGerald, Fillmore, and Richter[1]
Opinion by Justice Fillmore

A jury convicted Samuel Moncada of two offenses of sexual assault of a child and assessed punishment of two years' imprisonment on each offense. The trial court ordered that the sentences be served consecutively. In four points of error, Moncada asserts (1) the trial court erred by denying his motion to suppress DNA evidence and his motion to suppress his oral and written statements given to the police after his arrest, (2) he was denied due process when the trial court failed to hold a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and (3) the trial court abused its discretion by ordering the sentences to be served consecutively. We affirm the trial court's judgment.

---

[1] The Hon. Martin Richter, Retired Justice, sitting by assignment.

## Background[2]

On January 13, 2009, Eddie Zepeda and M.P. came to Moncada's house. M.P. was fifteen years old at the time and, despite multiple stays in a rehabilitation facility, had been abusing drugs since she was twelve years old. Zepeda bought beer, and Zepeda, M.P., and Moncada drank the beer in Zepeda's car. When the three ran out of beer, Zepeda purchased more. Zepeda and M.P. also ingested "cheese," a mixture of heroin and Tylenol 3.

According to Moncada, Zepeda had sex with M.P. in the front passenger seat of the car. Moncada later had sex with M.P. in the front passenger seat of the car. When Zepeda left, he asked if M.P. could spend the night at Moncada's house. Moncada agreed, and he and Zepeda carried M.P. into the house and placed her on the floor in one of the bedrooms. M.P. was intoxicated, but asked Moncada to wake her at 8:00 a.m.

M.P. died that night from a drug and alcohol overdose. When the police responded to the report of M.P.'s death, Moncada gave a written statement that he, Zepeda, and M.P. were drinking beer in Zepeda's car and that Zepeda and M.P. were sniffing heroin. According to Detective John Davidson, Moncada also made oral statements that he and Zepeda had sex with M.P.

During the autopsy, the medical examiner noted lacerations around M.P.'s anus. He also took both vaginal and anal swabs of the body. Tests on the swabs showed sperm in M.P.'s vaginal and anal cavities. The police obtained a buccal swab from Moncada, and a comparison of the DNA in the sperm found in M.P.'s body to the DNA in Moncada's saliva showed that Moncada was a possible contributor of the sperm found in M.P.'s vaginal and anal cavities. The probability of selecting at random an Hispanic person unrelated to Moncada with the same DNA

---

[2] Moncada has not challenged the sufficiency of the evidence to support the convictions. Accordingly, we recite only those facts necessary to address Moncada's complaints on appeal.

profile as that associated with the sperm found in M.P.'s anal cavity is 1 in 99.5 billion, and 1 in 301 quadrillion for the sperm found in M.P.'s vaginal cavity.

After he was arrested, Moncada gave both an oral and a written statement to the police. He admitted in his oral statement that he had vaginal and anal intercourse with M.P. and in his written statement that he had "sex" with M.P. He denied forcing M.P. to have intercourse.

### Motions to Suppress

In his first and third points of error, Moncada asserts the trial court erred by denying his motion to suppress any DNA evidence obtained from the buccal swab taken from Moncada and his motion to suppress his oral and written statements made to the police after his arrest. In his second point of error, Moncada contends he was denied due process when the trial court failed to hold an evidentiary hearing pursuant to *Franks*.

### *Standard of Review*

We review a trial court's ruling on a *Franks* motion and on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, No. PD-0388-12, 2013 WL 1438172, at *2 (Tex. Crim. App. Apr. 10, 2013); *Jones v. State*, 338 S.W.3d 725, 739 (Tex. App.—Houston [1st Dist.] 2011), *aff'd on other grounds*, 365 S.W.3d 854 (Tex. Crim. App.), *cert. denied*, 133 S. Ct. 370 (2012). We review the trial court's factual findings under an abuse of discretion standard, but review the trial court's application of law to the facts de novo. *Turrubiate*, 2013 WL 1438172, at *2. When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied fact findings. *Id*. We afford almost total deference to the trial court's determination of the historical facts that the record supports, especially when its implicit fact finding is based on an evaluation of credibility and demeanor. *Id*. This same deferential standard applies regardless of whether the trial court has granted or

denied a motion to suppress evidence. *State v. Duran*, No. PD-0771-12, 2013 WL 1628957, at *3–4 (Apr. 17, 2013). The party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Id.* at *4.

*Motion to Suppress DNA Evidence*

In his first point of error, Moncada contends the trial court erred by admitting any evidence of the DNA obtained from his saliva because there was no valid search warrant at the time the police obtained the buccal swab. Moncada specifically argues the search warrant authorizing the buccal swab was not valid because the affidavit in support of the warrant (1) did not describe Moncada's height, weight, or general appearance, (2) contained Moncada's home address, but did not describe the premises or give the legal description of the property, (3) did not state the reasons Moncada was a suspect in a sexual assault, (4) contained conclusory statements regarding probable cause, (5) falsely stated Moncada admitted he and Zepeda had sex with M.P., and (6) was dated after the date of the seizure.

Relevant Facts

Detective Cathy DeLaPaz testified that she is assigned to the high-risk victims unit, which is a part of the child exploitation unit of the Dallas Police Department. M.P. was on the high-risk victims unit's list of potential victims. After learning of M.P.'s death, DeLaPaz called the medical examiner's office "to make sure that a sexual assault kit was done" on M.P.'s body. According to Dr. Charles Gwin, the medical examiner who performed the autopsy on M.P.'s body, a "rape kit" consists of obtaining fingernail clippings, a blood sample, and swabs and smears of various orifices. After being informed that seminal fluid had been found during testing on the samples taken from the sexual assault kit and on clothes removed from M.P.'s body,

DeLaPaz requested a search warrant to obtain DNA from Moncada to compare with the DNA found during the testing.

The search warrant, which was admitted into evidence, is dated March 4, 2009. However, the affidavit in support of the search warrant indicates that it was "subscribed and sworn to" before the magistrate on March 24, 2009. DeLaPaz testified she did not notice that the magistrate wrote March 24th on the affidavit and does not know why he wrote that date. Detective James Bordelon testified he obtained the buccal swab from Moncada on March 6, 2009. He had a search warrant on March 6th and believes the warrant was obtained on March 4th. According to Bordelon, if the affidavit in support of the search warrant is dated March 24th, the date is incorrect and could have been an error by the judge signing the warrant.

Following Bordelon's testimony, Moncada filed a handwritten motion to suppress all DNA evidence and the oral and written statements made following his arrest on the basis that the buccal swab was taken before the search warrant was issued. The trial court denied the motion, and Stacy McDonald, the Deputy Chief of Physical Evidence and Acting Supervisor for the Forensic Biological Unit at the Southwestern Institute of Forensic Science, then testified about the testing of the DNA samples and that Moncada's sperm was found in M.P.'s vaginal and anal cavities.

Next, the State called Municipal Judge Daniel Solis who testified he signed the search warrant authorizing the buccal swab to be taken from Moncada. According to Judge Solis, an officer requesting a search warrant brings him two copies of the affidavit and requested search warrant. After Judge Solis places the officer under oath, he signs both copies of the affidavit and the warrant. He gives the officer one copy and files the other copy with the clerk of the court. The copy of the affidavit given to DeLaPaz is dated March 24, 2009, while the copy of the affidavit that Judge Solis filed with the clerk is dated March 4, 2000. According to Judge Solis,

the "2000" was a mistake. Judge Solis believes DeLaPaz obtained the warrant on March 4, 2009.

Analysis

Moncada argues the trial court erred by admitting the DNA evidence seized from Moncada because there was not a valid search warrant on March 6, 2009 when Bordelon obtained the buccal swab from Moncada. Moncada also complains there was no probable cause to support the issuance of the search warrant because the affidavit in support of the warrant (1) did not describe Moncada's height, weight, or general appearance; (2) did not describe the premises where Moncada lived or give the legal description of the property; (3) did not state the reasons Moncada was a suspect in a sexual assault; (4) contained conclusory statements regarding probable cause; and (5) falsely stated Moncada admitted he and Zepeda had sex with M.P. However, the motion to suppress filed by Moncada at trial was based solely on the discrepancy in the dates on the affidavit in support of the search warrant and on the warrant itself. Moncada raised none of his other complaints about the affidavit in support of the search warrant in the trial court and, therefore, has failed to preserve those issues for our review. TEX. R. APP. P. 33.1(a)(1); *Lejeune v. State*, 538 S.W.2d 775, 780 (Tex. Crim. App. 1976) (defendant waived complaints that he was arrested under an invalid warrant and trial court erred by allowing any evidence as result of arrest by failing to object on those grounds in trial court); *Davidson v. State*, No. 06-12-00147-CR, 2013 WL 474880, at *2 (Tex. App.—Texarkana Feb. 8, 2013, pet. filed).

Turning to Moncada's argument that the search warrant was invalid because the affidavit in support of the warrant was sworn to after the warrant was issued, a trial court is generally limited to the four corners of the affidavit supporting the warrant when determining whether there was probable cause to support the issuance of the warrant. *State v. McLain*, 337 S.W.3d

–6–

268, 271 (Tex. Crim. App. 2011). When the validity of a search warrant is questioned, "the warrant and supporting affidavit must be read together and a determination of validity made according to the totality of circumstances, the yardstick of measurement with the question of probable cause." *Green v. State*, 799 S.W.2d 756, 760 (Tex. Crim. App. 1990). However, "purely *technical* discrepancies in dates or times do not automatically vitiate the validity of" the search warrant, and such technical defects may be cured by explanatory testimony. *Id.* at 759–60 (emphasis in original).[3] The court of criminal appeals has found the same type of facial discrepancy as the one in this case to be cured through explanatory testimony. *See, e.g.*, *Rougeau v. State*, 738 S.W.2d 651, 663 (Tex. Crim. App. 1987) (upholding warrant because evidence showed affidavit dated January 6, 1977, instead of January 6, 1978, was clearly a typographical error), *overruled on other grounds by Harris v. State*, 784 S.W.2d 5, 19 (Tex. Crim. App. 1989); *Lyons v. State*, 503 S.W.2d 254, 255–56 (Tex. Crim. App. 1973) (facial discrepancy due to incorrectly dated search warrant was cured by explanatory testimony of police officer requesting warrant); *Martinez v. State*, 162 Tex. Crim. 356, 357–58, 285 S.W.2d 221, 222 (Tex. Crim. App. 1955) (holding that incorrectly dated jurat to supporting affidavit would not "vitiate the warrant" based on explanatory testimony heard by trial court).

Prior to denying the motion to suppress, the trial court heard testimony from DeLaPaz and Bordelon that the search warrant was obtained on March 4, 2009 and executed on March 6, 2009. Bordelon speculated, without objection, that the March 24, 2009 date on the affidavit was due to an error by the magistrate signing the search warrant. The officers' testimony that the warrant was issued on March 4, 2009 and executed on March 6, 2009 was undisputed and was

---

[3] *See also Bible v. State*, No. 07-11-00192-CR, 2013 WL 1411849, at \*2 (Tex. App.—Amarillo Apr. 8, 2013, no pet. h.) (mem. op., not designated for publication).

properly considered by the trial court. Accordingly, we cannot conclude the trial court erred by denying the motion to suppress.[4] We resolve Moncada's first point of error against him.

*Due Process*

In his second point of error, Moncada contends he was denied due process because the trial court did not conduct a hearing under *Franks* to determine whether the affidavit in support of the search warrant contained false statements. Moncada specifically asserts the affidavit in support of the search warrant (1) did not describe the premises where Moncada lived or give the legal description of the property, (2) contained conclusory statements regarding probable cause, and (3) falsely stated Moncada admitted he and Zepeda had sex with M.P.

In *Franks*, the United States Supreme Court held that when "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155–56. The defendant has the burden at the hearing to establish the allegation of perjury or reckless disregard by a preponderance of the evidence. *Id.* at 156; *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007). If the defendant meets his burden, the false material in the affidavit is set aside and the remaining content of the affidavit is reviewed to determine whether it establishes probable cause. *Franks*, 438 U.S. at 156; *Harris*, 227 S.W.3d at 85. To be entitled to a *Franks* hearing, a defendant must:

(1) allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false;

---

[4] Further, the trial court could have reconsidered the motion to suppress following Judge Solis's testimony. *See Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012). However, Judge Solis's testimony was consistent with DeLaPaz's and Bordelon's testimony and could support a finding by the trial court that the incorrect dates on the affidavits were the type of purely technical errors that may be explained. The testimony that the warrant was issued on March 4, 2009 and executed on March 6, 2009, and that the conflicting dates were errors, was undisputed.

(2) accompany these allegations with an offer of proof stating the supporting reasons; and

(3) show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support the issuance of the warrant.

*Harris*, 227 S.W.3d at 85. "Thus, specific allegations and evidence must be apparent in the pleadings in order for the trial court to even entertain a *Franks* proceeding." *Id.*

Nothing in the record shows the trial court was aware an alleged *Franks* violation was at issue. Moncada argued only that the discrepancy in the dates on the affidavit in support of the search warrant and on the warrant itself caused the warrant to be invalid. He did not point out to the trial court any statement in the affidavit he alleged to be false and did not show that, without the allegedly false statement, the affidavit was insufficient to support the issuance of the search warrant. Accordingly, Moncada failed to establish at trial that he was entitled to a hearing under *Franks*. *See Harris*, 227 S.W.3d at 85. We resolve Moncada's second point of error against him.

*Motion to Suppress Oral and Written Statements*

In his third point of error, Moncada argues the trial court erred by denying his pretrial motion to suppress his oral and written statements given to the police after he was arrested.[5] Moncada specifically asserts he did not knowingly and voluntarily waive his *Miranda*[6] rights prior to giving the statements.

Relevant Facts

Sergeant Byron Fassett testified at the pretrial hearing on Moncada's motion to suppress the oral and written post-arrest statements that Moncada was arrested between 5:00 and 6:00 a.m. Moncada was placed into a room at the police station that, in Fassett's opinion, was ambient

---

[5] At the hearing on the motion to suppress, Moncada also requested that his written statement given to Davidson on January 14, 2009 prior to his arrest be suppressed. He has not complained on appeal about the trial court's denial of the motion to suppress this first written statement.

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

temperature. Fassett read Moncada his *Miranda* rights and then obtained an oral and a written statement from Moncada. According to Fassett, Moncada appeared to understand his rights.

The trial court also reviewed portions of the interview between Fassett and Moncada. The recording showed that Fassett began interviewing Moncada at approximately 7:00 a.m. and the interview lasted less than an hour and a half. At the beginning of the interview, Fassett told Moncada that "I can't talk to you unless you want to talk to me." Fasset then read Moncada his *Miranda* rights. After informing Moncada of his right to terminate the interview at any time, Fassett stated that right means "any time you want to stop talking to me, you can stop talking to me." Fassett asked Moncada if he understood each and every one of the rights, and Moncada indicated that he understood.

Fassett than said, "Do you want to waive those rights. That's all I can ask. You can quit talking to me at any time you choose to." Moncada then asked what "waiving" his rights meant. Fassett confirmed that Moncada understood his rights by again reading the rights, stopping after each one to ask if Moncada understood. Moncada answered affirmatively each time. Moncada then stated that he understood his rights. Although Moncada's next statement on the video is difficult to understand, it appears Moncada asked Fassett if waiving his rights means he does not want to talk to Fassett. Fassett clarified that, if Moncada waived his rights, it meant that he could talk to Fassett. Moncada responded, "oh, oh." Fassett continued, "And you can stop talking any time you want to." Moncada indicated that he understood. Fassett then asked if Moncada was "saying you do want to talk to me." Moncada responded, "yeah, but I can stop."

At the end of the oral interview, Fassett asked if Moncada would give a written statement as well. A paragraph detailing Moncada's rights was typewritten at the top of the page. Moncada read the rights out loud and indicated they were "the same thing" and that he understood them. Moncada then read the next paragraph on the page that stated he "knowingly,

–10–

intelligently, and voluntarily waive[d]" his rights and was giving the statement of his own free will and without "any promises or offers of leniency or favors, and without compulsion or persuasion by any person." When Fassett asked Moncada if he understood, Moncada indicated it meant Fassett was not forcing him to make the statement.

At the conclusion of the hearing, the trial court made oral findings that article 38.22 of the code of criminal procedure had been complied with and, based on Moncada's statements in the video, it was apparent that Moncada understood his rights and intelligently, knowingly, and voluntarily waived his rights. Further, there were no threats of force by a police officer. Rather, the statement was "conversational," and not the result of coercion or compulsion. The trial court denied the motion to suppress as to both the oral and the written statement.

Analysis

The Fifth Amendment affords a person the right to be free from compelled self-incrimination. U.S. CONST. amend. V; *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). To protect this right, the individual must be warned of his constitutional and statutory rights prior to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 442–57 (1966); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22 §§ (2), 3(a)(2) (West 2005); *Herrera*, 241 S.W.3d at 525. In order for a statement to be admissible in the prosecution's case-in-chief, the individual must have knowingly, intelligently, and voluntarily waived his rights. *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260–61 (2010); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22 §§ (2), 3(a)(2); *Herrera*, 241 S.W.3d at 525.

The State has the burden of establishing by a preponderance of the evidence a knowing, intelligent, and voluntary waiver of a defendant's rights under *Miranda*. *Miranda*, 384 U.S. at 475; *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). In determining whether there was a valid waiver of a defendant's rights, we look to the totality of the circumstances,

–11–

"including the background, experience, and conduct of the accused." *North Carolina v. Butler*, 441 U.S. 369, 374–75 (1979); *see also Leza*, 351 S.W.3d at 349, 352–53.

There are two facets to any inquiry concerning the adequacy of a purported waiver of Miranda rights: (1) the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) the waiver must be made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis*, 130 S. Ct. at 2260 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)); *see also Leza*, 351 S.W.3d at 349. We do not consider a waiver of a *Miranda* right involuntary, though, unless there is some element of police overreaching. *Colorado v. Connelly*, 479 U.S. 157, 169–70 (1986); *Leza*, 351 S.W.3d at 349. The waiver need not be express or assume a particular form. *Butler*, 441 U.S. at 373. Where the prosecution can show that a *Miranda* warning was given and understood by the accused, his uncoerced statement establishes an implied waiver of his *Miranda* rights. *Berghuis*, 130 S. Ct. at 2262; *Butler*, 441 U.S. at 373. "It will suffice to render a waiver knowing and intelligent, in other words, that the accused has been made aware, and fully comprehends, that he has the right to remain silent in the face of police interrogation and to discontinue the dialogue at any time, and that the consequence of his waiver is that his words may be used against him later in a court of law." *Leza*, 351 S.W.3d at 350.

Moncada complains that he was arrested in the early morning hours and placed into a cold interview room. He asserts the record shows he did not understand the rights read to him by Fassett and that Fassett's explanation "undercut" the warnings read to Moncada. However, the record reflects that Moncada understood his rights and was only unsure as to whether the word "waive" meant that he wanted to talk to Fassett or did not want to talk to Fassett. After Fassett

–12–

explained that waiving his rights meant Fassett could talk to Moncada, Moncada indicated he wanted to waive his rights. Further, there was no coercion or threat of force by Fassett.

We conclude the trial court did not err by finding Moncada understood his rights and that his waiver of those rights was intelligent, knowing, and voluntary. Accordingly, the trial court did not err by denying Moncada's motion to suppress the oral and written statements made following his arrest. We resolve Moncada's third point of error against him.

### Sentencing

In his final point of error, Moncada argues the trial court erred by ordering the sentences in the two offenses to run consecutively because (1) section 3.03 of the penal code required the sentences to be served concurrently, and (2) he did not have notice of the State's motion requesting the sentences run consecutively. The jury assessed punishment of two years' imprisonment on each offense. After sentencing Moncada to two years' imprisonment in cause number F09-72067, the trial court sentenced Moncada to two years' imprisonment in cause number F09-72072 and stated, "it is the order, judgment, and decree of the Court that the sentence in this case shall commence only after the judgment in sentencing in Cause No. F09-72067 in the Criminal District Court No. 1 of Dallas County, Texas, wherein the Defendant was convicted of sexual assault of a child on today, January 21st of 2001 has seized [sic] to operate and has been discharged."

We turn first to Moncada's complaint that he did not receive notice of the State's motion for the sentences to be served consecutively. The State filed a "Notice of Request to Stack" two months prior to trial and certified that it was faxed to Moncada's counsel. Further, prior to voir dire, the trial court informed Moncada that the State had filed a motion asking that the trial court order the sentences to be served consecutively. Moncada did not at any time during trial or in his motion for new trial, object to a failure to receive notice of the State's motion. Accordingly, he

has failed to preserve this complaint for our review.  TEX. R. APP. P. 33.1(a); *Marrow v. State*, 169 S.W.3d 328, 330 (Tex. App.—Waco 2005, pet. ref'd).[7]

As to Moncada's complaint that the trial court erred by ordering the sentences to be served consecutively, we review a trial court's decision to cumulate sentences for an abuse of discretion.  *DeLeon v. State*, 294 S.W.3d 742, 745 (Tex. App.—Amarillo 2009, pet. ref'd); *see also Smith v. State*, 575 S.W.2d 41, 41 (Tex. Crim. App. [Panel Op.] 1979) ("Normally, the trial judge has absolute discretion to cumulate sentences.").  A trial court abuses its discretion if it (1) imposes consecutive sentences where the law requires concurrent sentences, (2) imposes concurrent sentences where the law requires consecutive sentences, or (3) otherwise fails to observe the statutory requirements pertaining to sentencing.  *Nicholas v. State*, 56 S.W.3d 760, 764–65 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

Section 3.03 of the penal code limits a trial court's authority to order consecutive sentences in a single criminal action arising out of the same criminal episode.  *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992).  However, as relevant to this appeal, section 3.03(b) of the penal code provides that, if a defendant is found guilty of more than one offense arising out of the same criminal episode, the trial court may order the sentences to run concurrently or consecutively if each sentence is for a conviction of an offense under section 22.011 of the penal code committed against a victim younger than seventeen years old.  TEX. PENAL CODE ANN. §§ 3.03(b)(2)(A) (West Supp. 2012), 22.011 (West 2011) (offense of sexual assault).  Accordingly, the statute allowed the trial court, in its discretion, to impose consecutive sentences for Moncada's two convictions for sexual assault of a child, and the trial court did not abuse its discretion by doing so.  We resolve Moncada's fourth issue against him.

---

[7] *See also Deal v. State*, No. 01-06-00249-CR–00250-CR, 2007 WL 2874796, at *3 (Tex. App.—Houston [1st Dist.] Oct. 4, 2007, no pet.) (mem. op., not designated for publication) (complaint regarding lack of notice of a State's motion to cumulate sentences not preserved for appellate review).

We affirm the trial court's judgments.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

110820F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SAMUEL MONCADA, Appellant

No. 05-11-00820-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F09-72070-H.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 2nd day of May, 2013.


/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE

–16–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SAMUEL MONCADA, Appellant

No. 05-11-00821-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F09-72067-H.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 2nd day of May, 2013.


/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE