**AFFIRM; and Opinion Filed August 27, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-13-00017-CR
_____

### ROBERT TRACY WARTERFIELD, Appellant
### V.
### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 416th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 416-80757-2011

---

## MEMORANDUM OPINION
Before Justices Bridges, O'Neill, and Brown
Opinion by Justice O'Neill

Appellant appeals two convictions for aggravated sexual assault of a child and two convictions for indecency with a child. After finding appellant guilty of the offenses, the jury assessed punishment at life confinement in the aggravated sexual assault cases and twenty years' confinement in the indecency cases. The jury also assessed a $10,000 fine in each case. In three issues, appellant contends the trial court erred in: (1) denying his motion to dismiss, (2) denying his motion to suppress evidence, and (3) overruling his objection to impeachment evidence admitted in violation of a prior plea bargain agreement. For the following reasons, we affirm appellant's convictions.

On the night of December 9, 1989, an intruder entered the home of nine-year old Sandra Jones, took the sleeping child from her bed, into her back alley, and sexually assaulted her.

Although appellant had been a suspect in the case since at least 1994, he was not prosecuted until DNA testing performed in 2010 linked him to the offense.

At trial, Jones, then thirty-two years old, testified she woke up on the night of the offense when her head hit against their back gate. A man was carrying her into the alley and she had a pillowcase over her head. The man sexually assaulted her in the alley, ultimately ejaculating into her mouth. She did not see the man, who warned her to keep the pillowcase over her head and not to look at him. After the assault, she fled back to her house.

That night, police collected evidence at the scene including the pillowcase, a cloth belt, and a mold of a shoe print found adjacent to the gate. The pillowcase was sent to the Southwest Institute of Forensic Science (SWIFS). Stains on the pillowcase tested presumptively positive for seminal fluid, but no DNA testing was performed because, at that time, DNA testing was only done if there was a suspect to make a comparison. The stained portions of the pillow case were cut and retained by SWIFS.

In 2010, Angela Fitzwater, a forensic biologist at SWIFS, compared DNA from sperm found on the pillowcase to DNA obtained from a blood sample taken from appellant in 1992. She said appellant's DNA profile matched the DNA profile from the pillowcase. The probability of a random Caucasian person matching the DNA profile was 1 in 33 quadrillion, an African-American 1 in 2.43 quintillion, and a random Southwest Hispanic 1 in 4.09 quadrillion. Following the 2010 testing, police obtained a search warrant for a buccal swab of appellant. The DNA obtained from the buccal swab was also compared to DNA from the pillowcase. The results were the same.

Appellant testified to support his defensive theory of a plot to frame him that he believed originated in 1992. Specifically, in 1992, Dallas police executed a search warrant of his apartment in connection with a different case. In that search, police seized articles of his

clothing. Appellant testified he had "no doubt," his semen would have been "readily available" on those clothes. Appellant believed "they" somehow transferred his semen to the pillowcase evidence in this case.

Although appellant's testimony was not entirely clear, as a motive, appellant suggested "they" had come to believe appellant was guilty of another offense in which another man, Steven Brody, had been convicted. Specifically, they discovered appellant's fingerprint at the scene of the Brody case and therefore believed he had committed that offense. Because "exoneration" would have been big news, and they wanted to ensure "justice was done," they fabricated evidence against appellant in this case. The jury, rejecting appellant's defensive theory, found him guilty of the offenses.

In his first point of error, appellant contends the trial court erred in denying his motion to dismiss. Appellant filed a pretrial motion to dismiss asserting his prosecution for the offenses was time barred because of a 1994 plea bargain entered into in a different case in which he had pleaded guilty to sexual assault. He also asserted dismissal was required because the delay between the offense and his indictment violated his right to due process.

At the hearing on appellant's motion to dismiss, Jeff Pierce, appellant's trial attorney in the 1994 case testified. He said at the time of the 1994 plea, appellant was being investigated for a series of other cases. The case was "high-profile" and the media had dubbed appellant the "North Dallas Rapist." Pierce believed the State was having "witness problems," and appellant ultimately pleaded guilty to sexual assault in exchange for a ten-year probated sentence. As part of the plea agreement, the State also agreed not to use the 1994 conviction if appellant was later prosecuted for other offenses in which he was a suspect. Specifically, the prosecutor agreed not to use the "conviction" to impeach appellant if he testified in a subsequent prosecution in those

cases and agreed not to use the "conviction" as an extraneous act or as punishment evidence. An attachment to the plea listed the cases it applied to, one of which was the Jones case.

Appellant also testified at the hearing. Appellant testified that at the time of his 1994 plea, the statute of limitations for these cases was ten years. According to appellant, by agreeing not to use the 1994 conviction in subsequent prosecutions, the State also agreed that the statute of limitations for those offenses would be frozen at ten years. He therefore asserted the State's 2011 prosecution violated the plea bargain. Appellant also testified that he believed his due process rights were violated because "evidence" had been destroyed and memories have "dimmed."

The trial court denied appellant's motion to dismiss. On appeal, appellant first asserts the trial court should have dismissed the case based on the ten-year statute of limitations that existed at the time of the 1994 plea bargain.

Appellant does not dispute the legislature amended the applicable statutes of limitations before his 2011 prosecution for the 1989 offenses ever became time barred and that there is currently no statute of limitations for indecency with a child or sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(B), (E) (West Supp. 2013) Statutes of limitations are measures of public policy "entirely subject to the will of the Legislature." *Phillips v. State*, 362 S.W.3d 606, 613 (Tex. Crim. App. 2011) (citing *Vasquez v. State*, 557 S.W.2d 779, 781 n. 2 (Tex. Crim. App. 1977) (op. on reg'h)). Consequently, they "may be changed or repealed without violating constitutional prohibitions against ex post facto laws in any case where a right to acquittal has not been absolutely acquired by the completion of the period of limitations." *Id*. Appellant nevertheless asserts applying the amended statute of limitations to the 1989 assault violated the 1994 plea agreement. Specifically, he contends the 1994 plea agreement "restricted the parties to the state of law existing at the time of the [plea agreement], including the

–4–

applicable statute of limitations." *See Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934). We disagree for two reasons. First, the 1994 plea agreement referenced only the State's ability to use the 1994 conviction as evidence if appellant was later prosecuted for the enumerated offenses. The plea agreement did not purport to place any limitations on the State's ability to prosecute appellant for those offenses, much less reference the statute of limitations applicable to those offenses. Additionally, to the extent we must read the plea agreement as a contract that generally incorporated the laws that existed in 1994, the law at that time also permitted the legislature to extend limitations for a crime that had yet to become time barred. *See Vasquez*, 557 S.W.2d at 781 n. 2.

Appellant next asserts the trial court should have granted his motion to dismiss because the excessive delay in prosecuting him violated his due process rights. Statutes of limitations are the primary guarantee used to protect citizens from stale criminal charges that impair a citizen's ability to defend themselves. *State v. Krizen-Wilson*, 354 S.W.3d 808, 813-14 (Tex. Crim. App. 2011). The Due Process Clause of the United States Constitution also provides limited protection against oppressive delay. *Id*. at 814 (citing *U.S. v. Lovasco*, 431 U.S. 783, 799 (1977). When a defendant seeks dismissal under the due-process clause based on delay, proof of prejudice is generally a necessary, but not sufficient, element for relief. *Id*. To be entitled to relief, a defendant must also show that the delay was an intentional device used to gain a tactical advantage over the accused. *Krizen-Wilson*, 354 S.W.3d at 813-14.

Here, appellant asserts his due process rights were violated because the delay (1) prejudiced his defense, and (2) gave the State a tactical advantage. To support his claims of prejudice, appellant relies on evidence presented at trial. This evidence was not before the trial court at the time it made is ruling on the motion to dismiss. Therefore, we cannot consider it in our review. *See Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). Nor can we agree

with appellant that the record shows the delay gave the State a "tactical advantage." According to appellant, the delay allowed the State to use more advanced DNA testing procedures that enabled it to link him to the offense. Appellant directs us to nothing in the record to support this assertion.

Moreover, even if the State benefitted from advances in DNA testing, there is no evidence that any delay was an intentional device to gain such an advantage. Nor has appellant alleged or shown any other improper motive for the State's delay. Therefore, appellant's due process claim fails. See *Krizen-Wilson*, 354 S.W.3d at 817-19. We resolve the first issue against appellant.

In his second issue, appellant asserts the trial court erred in denying his motion to suppress evidence. Appellant filed a pretrial motion to suppress seeking to suppress all physical and biological evidence seized pursuant to warrants issued in August 1992, September 1992, and October 2010. He asserted the evidence should be suppressed because the warrants were "without probable cause." Appellant presented a different argument at the hearing on the motion to suppress. At that time, he complained the October 13, 2010 search warrant relied on evidence obtained from the September 1992 warrant, which in turn was tainted by evidence illegally obtained from the August 1992 warrant. He asserted the August 1992 warrant was invalid because it was issued by a City of Dallas municipal judge, but was for a location in Collin County. He asserted because the August 1992 "anchor warrant" supported the subsequent warrants, the genetic evidence obtained from those warrants should be suppressed.

On appeal, appellant asserts the trial court erred in denying his motion to suppress because the State failed to prove the identity of the magistrate that signed the August 1992 warrant and therefore failed to show that magistrate had authority to issue the warrant. To preserve a complaint for appellate review, the complaining party must make a timely specific

objection and obtain a ruling on the objection. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2001). The purposes of requiring a specific objection are: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it, and (2) to give opposing counsel the opportunity to respond to the complaint. *Resendez v. State*, 306 S.W.3d 308, 314 (Tex. Crim. App. 2009).

At the hearing on appellant's motion to suppress, appellant complained only that the City of Dallas magistrate that issued the warrant only had jurisdiction within its "city limits." The search warrant shows that it was for a location in the City of Dallas, but in Collin County.[1] Thus, the search warrant was not for a location outside the magistrate's city limits, and appellant's complaint in the trial court was without merit. Appellant did not otherwise complain that the State failed to show the magistrate lacked authority. Therefore, this issue is not preserved for review. *See* Tex. R. App. P. 33.1(a); *see also Davidson v. State*, 422 S.W.3d 750, 754 (Tex. App.—Texarkana 2013, pet. ref'd).

Appellant also asserts the trial court erred in denying his motion to suppress because the September 1992 warrant was "fatally flawed." He complains that the affidavit in support of the search warrant "appears" not to have been signed by the affiant and was not shown to be otherwise sworn to by the affiant. Again, appellant did not raise this complain in the trial court and it is also waived.[2] We resolve the second issue against appellant.

In his third issue, appellant complains the trial court erred in allowing the State to impeach him with his 1994 conviction in violation of the 1994 plea agreement. A plea bargain is a contract between the State and the defendant. *Ex Parte De Leon*, 400 S.W.3d 83, 89 (Tex. Crim. App. 2013); *Moore v. State*, 295 S.W.3d 329, 331 (Tex. Crim. App. 2009). Once a plea

---

[1] The City of Dallas lies in both Dallas and Collin Counties.

[2] Had appellant raised the complaint, the State would have had the opportunity to present other evidence showing the affiant swore to the facts contained in the affidavit before the magistrate. *See, e.g., Smith v. State*, 207 S.W.3d 787, 788 (Tex. Crim. App. 2006).

agreement is finalized and the trial court binds itself to the terms, the State and the defendant are entitled to the benefit of the bargain. *Ex Parte De Leon*, 400 S.W.3d at 89; *see Ricketts v. Adamson*, 483 U.S. 1, 9–12 (1987); *State v. Moore*, 240 S.W.3d 248, 251 (Tex. Crim. App. 2007). We apply general contract law principles to determine the intended content of a plea agreement. *Ex parte Moussazadeh*, 64 S.W.3d 404, 411–12 (Tex. Crim. App. 2001). Appellate courts look to the written agreement, as well as the formal record, to determine the terms of the plea agreement, and we will imply a term only when necessary to effectuate the intention of the parties. Id.

Under the terms of the plea agreement, the State agreed not to "impeach" appellant with the 1994 "conviction" if he testified in a subsequent prosecution in certain cases, including this one. Before appellant testified, the trial court conducted a hearing on appellant's motion in limine concerning the 1994 offense. The State represented that it did not intend to impeach appellant with the prior conviction, as generally permitted under rule 609 of the rules of evidence, and the trial court ruled it would not be permitted to do so. However, the State indicated it would seek to introduce evidence of the 1994 conviction on rebuttal depending on appellant's testimony. Before appellant testified, he was carefully admonished, and his trial counsel cautioned him that if he testified, he would be subject to cross-examination and the State would attempt to get in as much of the "other matters" that it could.

Appellant then testified on direct-examination, "[t]here is no way that I have ever been the way they describe, or any other way, molesting a child like that. There -- I don't know what to say, but it happened to me when I was four years old. It's very brutal, and I could never do that to anybody else."

After appellant's direct testimony, the trial court conducted a hearing to determine whether appellant had opened the door to evidence of his 1994 guilty plea to sexual assault of a

–8–

child. The trial concluded that appellant had opened the door and further rejected appellant's claim that such impeachment would violate the 1994 plea agreement. In doing so, the trial court, considering the circumstances of the plea, determined that the parties were not contemplating impeachment for a false statement on the stand and construed the plea agreement as referencing impeachment for a "conviction" under rule 609 of the rules of evidence. Because there was nothing in the agreement that would indicate it could be used to allow appellant to testify falsely with "complete impunity," the trial court overruled appellant's objection to the evidence.

The State was then permitted to question appellant about whether he had pleaded guilty to sexually assaulting a child in 1994 despite his earlier testimony that he could never do such a thing. Appellant admitted that he had and that the State had been "after him" ever since.

A trial judge's evidentiary rulings are reviewed under an abuse-of-discretion standard. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). As long as the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion, and we must uphold the trial court's ruling. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

By choosing to testify, a defendant puts his or her character for veracity (as opposed to moral character) in issue. A defendant who takes the witness stand may be cross-examined and impeached in the same manner as any other witness. *Bowley*, 310 S.W.3d at 434. A defendant may be "contradicted, impeached, discredited, attacked, sustained, bolstered, made to give evidence against himself, cross-examined as to new matters, and treated in every respect as any other witness . . . ." *Id*. Additionally, a party should not be allowed to create a favorable inference, but then deprive the other party of the truth-finding mechanism of cross-examination. *Id*. at 435. Therefore, otherwise inadmissible evidence may become admissible when a party opens the door. *Id*.

Rule 609 of the rules of evidence provides the parameters and standards for when prior convictions can be used to impeach a witness's credibility. *See* Tex. R. Evid. 609. Under rule 609, evidence of certain prior convictions is considered relevant to the witness's *general* credibility. *See U.S. v. Carter*, 953 F.2d 1449, 1458 (5th Cir. 1992); *see also Irby v. State*, 327 S.W.3d 138, 147 (Tex. Crim. App. 2010). It applies only if the conviction is a felony or a crime of moral turpitude and only if the probative value of admitting the evidence outweighs its prejudicial effect. TEX. R. EVID. 609 (a). Because relevance under rule 609 flows from the conviction itself, in conducting a rule 609 balancing test, crimes involving deception are considered more probative than crimes of violence. *See Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992).

We begin by noting that in his appellate brief, appellant repeatedly misstates the terms of the plea bargain agreement. Specifically, he states the parties agreed not to use the "plea bargain agreement" for impeachment. However, the agreement did not reference impeachment with the plea agreement, but impeachment with the "conviction." We agree with the trial court that the circumstances of the plea agreement and its language referencing impeachment with a "conviction," reflect the parties' intent to reference impeachment under rule 609, the rule applicable to impeachment with prior convictions.

Here, the State did not impeach appellant under rule 609 with a "conviction." Nor indeed was evidence of appellant's guilty plea admitted to impeach appellant's general credibility. Instead, the State impeached appellant with evidence that he had previously admitted to committing the very offense he had testified he could never commit due to his own history of abuse. We cannot conclude the trial court abused its discretion in overruling appellant's objection.

Appellant also asserts the trial court abused its discretion in admitting the evidence under rule 609 because it failed to properly balance the probative value of the evidence against the danger of prejudice. However, because the evidence was not admitted under rule 609, this claim is likewise without merit. Additionally, appellant's only complaint in the trial court was that the admission of the evidence violated his plea agreement. Therefore, he waived this argument. *Cook v. State,* 858 S.W.2d 467, 474 (Tex. Crim. App. 1993) (when complaint on appeal differs from that made at trial, the error is waived). Appellant also asserts, for the first time on appeal, that evidence of his guilty plea was inadmissible under rules 404(b) and 403 of the rules of evidence. Because these complaints were not raised in the trial court, they have likewise been waived. *See id.* We resolve appellant's third issue against him. We affirm appellant's convictions.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE

Do Not Publish
Tex. R. App. P. 47

130017F.U05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ROBERT TRACY WARTERFIELD,
Appellant

No. 05-13-00017-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 416-80757-2011.
Opinion delivered by Justice O'Neill.
Justices Bridges and Brown participating.

Based on the Court's opinion of this date, the judgments of the trial court are
**AFFIRMED**.

Judgment entered this 27th day of August, 2014.