

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00175-CR

CASEY DALE HAMMACK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 41,514-A

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# O P I N I O N

Following his plea of guilty to possession of a controlled substance,[1] Casey Dale Hammack was placed on deferred adjudication community supervision for a period of three years beginning in August 2012. Hammack appeals the trial court's subsequent revocation of his community supervision[2] and adjudication of guilt, as well as the resulting six-month sentence of imprisonment. Hammack contends that the evidence is insufficient to prove the allegations in the State's application to proceed to adjudication and that the trial court erred when it revoked his deferred adjudication community supervision.

We find that the evidence was sufficient to support the conclusion that Hammack violated a condition of his deferred adjudication community supervision. Consequently, we affirm the trial court's judgment.

## I.       Background

On August 6, 2012, the trial court placed Hammack on deferred adjudication community supervision. Pursuant to the trial court's order establishing conditions of community supervision, Hammack was required to abstain from drugs and alcohol. In addition, the trial court ordered Hammack to submit to a drug and alcohol evaluation and, based on the results, to follow the recommendations he was given.

---

[1]Hammack waived the right to indictment and was charged by information with the offense of possession of a controlled substance—methamphetamine—in an amount less than one gram.

[2]For purposes of this opinion, the terms "deferred adjudication community supervision" and "community supervision" are used interchangeably.

On February 19, 2014, the State filed an application to proceed to adjudication alleging that Hammack violated the condition of his community supervision that he abstain from the use of drugs and alcohol. On March 31, 2014, the State amended its application to allege that, in addition to using marihuana on February 15, 2014, Hammack violated terms of his community supervision by committing theft, using methamphetamine, and testing positive for marihuana.

On April 7, 2014, the trial court continued Hammack on community supervision but modified the terms by requiring that Hammack receive substance abuse treatment. As an alternative to adjudicating him guilty of the underlying offense and sentencing him to a term of imprisonment, the trial court ordered Hammack to participate in a treatment program for no more than twenty-four months in the DEAR Unit.[3] Among other requirements, Hammack was ordered to obey all rules and regulations of the DEAR Unit, successfully complete all recommended treatment programs, submit to random alcohol and drug testing, and remain in the facility until discharged by the trial court upon recommendation of the DEAR Unit staff and Hammack's community supervision officer (CSO).

On July 1, 2014, the State filed an application to proceed to adjudication pointing to the modified condition that Hammack submit to random alcohol and drug testing while in the DEAR Unit. On July 28, 2014, the State amended its application to proceed to adjudication by alleging that, in addition to failing to obey the DEAR Unit's rules and regulations, Hammack failed to successfully complete all recommended treatment programs and remain in the facility until

---

[3]The DEAR Unit is a recovery community corrections facility.

3

successfully discharged by the trial court upon recommendation of the DEAR Unit staff and Hammack's CSO. In particular, the State alleged that Hammack was discharged for violating the DEAR Unit's rule prohibiting "romantic/sexual relationships with peers or staff." Following a hearing on August 25, 2014, the trial court found that Hammack failed to comply with the modified conditions of his community supervision when he was discharged from the DEAR Unit on or about June 25, 2014, without successfully completing his treatment. After the hearing, the trial court revoked Hammack's community supervision, adjudicated him guilty of possession of a controlled substance, and sentenced him to six months' confinement in a state jail facility with credit for time he previously served in jail.[4]

## II. Standard of Review

We review a decision to adjudicate guilt in the same manner as we review a decision to revoke community supervision—for abuse of discretion. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West Supp. 2014); *Little v. State*, 376 S.W.3d 217, 219 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)); *see In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). In a revocation hearing, the trial court is the sole trier of the facts and determines the credibility of the witnesses and the weight given to their testimony. *T.R.S.*, 115 S.W.3d at 321. However,

> where the trial court, through a condition of the appellant's community supervision [makes] the appellant's compliance with the terms of his community supervision subject to the discretion of a third party, [then] to determine whether the trial court abused its discretion we must also examine the third party's use of its discretion to

---

[4]The judgment adjudicating Hammack's guilt reflected a plea of "true" to the allegations in the State's motion to adjudicate. On October 3, 2014, the trial court entered a nunc pro tunc judgment adjudicating guilt which contained the correct plea of "not true."

4

ensure that it was used on a basis that was rational and connected to the purposes of community supervision.

*Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012).

Here, the State alleged that Hammack failed to successfully complete all recommended treatment programs and remain in the DEAR Unit until successfully discharged by the trial court. Determining whether Hammack successfully completed the treatment program was left to the discretion of the DEAR Unit staff. Accordingly, the State had to prove (1) that Hammack was discharged by the DEAR Unit before successfully completing his treatment programs and (2) that the basis for his discharge was "rational and connected to the purposes of community supervision." *See id.* We review the trial court's determination that the State met its burden for an abuse of discretion. *Id.*[5] A trial court's decision to revoke community supervision and to proceed to adjudication is examined in the light most favorable to the trial court's judgment. *Id.*

## III. The Trial Court Did Not Abuse its Discretion When it Revoked Hammack's Deferred Adjudication Community Supervision and Adjudicated His Guilt

### A. Hammack's Argument

Using the generally understood definition of a romantic or sexual relationship, Hammack argues that the State failed to prove that he engaged in a romantic/sexual relationship in violation

---

[5]Although the *Leonard* opinion states that "we must also examine the third party's use of its discretion," the *Leonard* court was not performing a de novo review of the trial court's decision to revoke based on the third party's use of discretion. Rather, the court was resolving the larger question of whether *any* third party's decision could properly be based on a failed polygraph examination alone. Resolution of that larger question necessarily resolved the case before it, but by doing so, the court was not instituting a new standard of review in revocation cases. *See Leonard*, 385 S.W.3d at 577 ("If the polygraph results were inadmissible, then the record would not contain a basis for [the third party's] decision to discharge the appellant, and the trial court abused its discretion by adjudicating the appellant guilty."). Thus, as in any revocation proceeding, the trial court determines whether the basis for the third party's decision was rational and connected to the purposes of community supervision, and the appellate court reviews the trial court's determination for an abuse of discretion.

5

of the DEAR Unit's specific rule prohibiting such conduct.[6]  Hammack contends the evidence presented at the hearing merely proved that he violated the DEAR Unit's rules when he entered into another peer's room for a "spanking" on his birthday, and by engaging in a massage with another peer.  Because the State's amended application to proceed to adjudication alleged that Hammack violated the rule prohibiting "romantic/sexual relationships," Hammack contends that the State's evidence is insufficient to prove the allegation against him and that, therefore, the trial court erred when it revoked his community supervision and adjudicated his guilt.

**B.     The Evidence**

Whitwell, Hammack's counselor for a brief period during his time at the facility, testified that the DEAR Unit is a cognitive program premised on the principle that changing the way a client thinks and what he believes will result in a corresponding change in behavior.  According to Whitwell, Hammack understood the DEAR Unit's basic premise, but he struggled to apply it.  In particular, he had difficulty focusing on treatment issues.

Whitwell testified that Hammack was unsuccessfully discharged from the Dear Unit because he did not comply with the unit's rules.  According to Whitwell, Hammack violated the rule forbidding clients from "put[ting] their hands on" other clients and the rule forbidding entry into another client's room when he engaged in a massage with another peer in that peer's room.  Hammack admitted to Whitwell that he did, in fact, give another client a massage and that he had

---

[6]For instance, after one of the DEAR Unit's substance abuse counselors, Mike Whitwell, testified that Hammack violated one of the facility's cardinal rules by engaging in "a massage, if you will, with a peer, in the peer's room," Hammack objected, "Judge, we'll object to that because, by any stretch of the imagination, a massage is not a romantic/sexual relationship.  And if this is all that it is about, being the only evidence they have, we state it's insufficient and it's a matter that should not be discussed."

been in the other client's room on several occasions. Hammack also acknowledged that on one occasion, he entered another client's room and was later "spanked" by his peers in that room. When asked whether Hammack consented to the "spanking," Whitwell testified that Hammack smiled while discussing the incident and indicated the spanking was "apparently ok." Hammack admitted to Whitwell that on two occasions, he sat on a peer's bed, which is also a violation of the DEAR Unit's rules. Although Hammack admitted to these events, he denied having a sexual or romantic relationship with anybody at the unit.

Whitwell testified that he did not personally observe Hammack engage in any of the violative behavior and that he did not know whether Hammack touched any specific part of his peer's anatomy when he gave him the massage. Whitwell disagreed with Hammack's assertion that a sexual relationship required "discharging bodily fluids from the lower parts" of the anatomy. Whitwell explained that the prohibition on romantic or sexual relationships within the DEAR Unit included any relationship that was counter-productive to the purpose of the facility. The DEAR Unit construes the term "romantic relationship" as something that can be "roughly construed as simply an affectionate remark" from one peer to another. According to Whitwell, the rule is necessary to prevent "a group of individuals who are not willing to comply with the rules and not willing to hold others accountable for their failure to comply with the rules" from compromising the facility's effectiveness.[7] In response to Hammack's actions, the treatment team decided that

---

[7]Whitwell explained, "[I]t's termed a negative contract. If I observed someone doing something improper and I don't report it, I establish a relationship with that individual. So should I offend at some later date, I can bring that into account and tell them, 'hey, I did not front you out, you don't front me out.'"

Hammack had compromised his ability to actively engage in and focus on his treatment, and the team determined that discharging him was the appropriate action.

### C.    Analysis

Although he couches his argument in terms of legal sufficiency, Hammack essentially contends that there was a variance between the allegation in the amended application to proceed to adjudication and the evidence the State offered at the hearing. Before revoking his deferred adjudication community supervision and proceeding to adjudication, due process required, at a minimum, that Hammack receive written notice that fully informed him which terms of his community supervision the State was alleging he breached and the conduct allegedly constituting the breach. *See Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. ref'd); *Moore v. State*, 11 S.W.3d 495, 499 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. [Panel Op.] 1980)). Moreover, the trial court's authority to revoke community supervision is limited by the allegations of which the accused had due notice, i.e., those contained in the written motion to revoke. *Moore*, 11 S.W.3d at 499. Nevertheless, the notice requirements in the revocation context are not nearly as stringent as those required for an indictment. *Chacon v. State*, 558 S.W.2d 874, 876 (Tex. Crim. App. 1977). All that is required is that the motion to revoke fully and clearly set forth the bases on which the State seeks revocation so that the accused and his counsel have notice. *See Leyva v. State*, 552 S.W.2d 158, 162 (Tex. Crim. App. 1977).

A "variance" occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001).

8

In Texas, variance claims have routinely been treated as sufficiency of the evidence issues rather than as notice-related claims. *Id*. Regardless of how variances are treated, a variance is fatal only if it operated to the defendant's surprise or prejudiced him. *Id*. at 257; *Human v. State*, 749 S.W.2d 832, 837 (Tex. Crim. App. 1988). When reviewing a variance, we must determine whether the charging instrument, as written, informed the defendant of the charge against him or sufficiently allowed the defendant to prepare an adequate defense at trial and whether the prosecution under the deficiently drafted instrument would subject the defendant to the risk of being prosecuted later for the same crime. *See, e.g.*, *Traylor v. State*, 561 S.W.2d 492, 494 (Tex. Crim. App. [Panel Op.] 1978). The fatal variance doctrine is applicable to revocations of community supervision. *Moore*, 11 S.W.3d at 499–500 (citing *Taylor v. State*, 592 S.W.2d 614, 615 (Tex. Crim. App. [Panel Op.] 1980)).

In the State's amended application to proceed to adjudication, it is clear that, in exchange for the trial court deferring Hammack's guilt and placing him on deferred adjudication community supervision, Hammack agreed to comply with modified condition (16), which stated, "While in the DEAR Unit, [Hammack] shall participate in all programs, obey all rules and regulations, follow and successfully complete all recommended treatment programs and remain in the facility until discharged by the Court upon recommendation of the DEAR Unit staff and his supervision officer." The State's amended application alleged that Hammack violated "modified condition (16) in that he was unsuccessfully discharged from the DEAR Unit on or about the 25th of June, 2014[,] for violating Cardinal Rule #2: no romantic/sexual relationships with peers or staff."

9

In *Pierce*, we found that the State's allegation that the defendant violated the conditions of her community supervision by committing a criminal offense was satisfied by proof that the defendant fraudulently "completed" a check by entering her name as payee even though the State alleged she "made" the check by fraudulently signing her employer's name to it. *Pierce*, 113 S.W.3d at 434–35. We found no surprise or prejudice to the defendant in Pierce because "the variance [there went] only to how the revoking offense was committed." *Id*. at 441. We cited language from *Chacon*, where the Texas Court of Criminal Appeals stated,

> While the allegation was preceded by "Failure to avoid injurious or vicious habits: to-wit:" the appellant did not in the trial court nor now claim he was misled as to what he was called upon to defend against. The court did not base its finding upon a violation of a probationary condition separate and distinct from the one alleged in the motion to revoke probation.

*Chacon*, 558 S.W.2d at 876.

Likewise, there was no surprise or prejudice to Hammack here. He was discharged for violating the DEAR Unit's rules prohibiting physical contact between peers, and the only variance is whether that touching also violated the rule against engaging in romantic or sexual relationships with peers or staff or whether it violated the facility's rule prohibiting clients from putting their hands on other clients and entering other clients' rooms. Either way, Hammack violated the rules prohibiting physical contact between peers. Moreover, Hammack neither alleged to the trial court that he was surprised by the State's proof, nor does he allege such here. Neither does he deny that the prohibited peer-to-peer contact occurred. Rather, Hammack simply asserts that the State alleged a violation of the prohibition of romantic relationships and only proved a "massage" and a "spanking."

10

For the reasons set forth in *Pierce*, we find that there is no fatal variance here. Consequently, we find that the evidence is sufficient to show that the DEAR Unit's staff did not abuse its discretion in discharging Hammack for violating its rules against physical contact between the unit's clients. Therefore, we also find that the trial court did not abuse its discretion in revoking Hammack's community supervision and adjudicating him guilty based on the DEAR Unit's decision to discharge Hammack from the program.

## IV.   Conclusion

We affirm the trial court's judgment.


Ralph K. Burgess
Justice


Date Submitted:     February 27, 2015
Date Decided:       April 24, 2015

Publish

11