

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00170-CR

RICKEY CUNNINGHAM, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 20-0112X

Before Stevens, C.J., van Cleef and Rambin, JJ.
Opinion by Justice van Cleef

# OPINION

On June 10, 2022, Rickey Cunningham pled guilty to two counts of sexual assault of a child and, pursuant to a plea-bargain agreement with the State, was placed on deferred adjudication community supervision for ten years. The State moved to adjudicate Cunningham's guilt for both offenses on the grounds that he violated the terms and conditions of his community supervision by testing positive for methamphetamine on June 14. After the trial court found the State's allegation true, it revoked Cunningham's community supervision, found him guilty of two counts of sexual assault of a child, and sentenced him to ten years' imprisonment on each count.

On appeal, Cunningham argues (1) that the trial court erred by failing to quash the State's motion to adjudicate guilt, (2) that the evidence is insufficient to establish that he violated the terms and conditions of his deferred adjudication community supervision, and (3) that the trial court erred by admitting testimony about the contents of Cunningham's community supervision file—which was authored by a non-testifying witness—over his objection that the testimony violated his right to confrontation. We find that Cunningham received fair notice of a violation of community supervision and that sufficient evidence supports the trial court's decision to adjudicate guilt. However, because we find that Cunningham was harmed by a denial of his right to confront the key witness against him, we reverse the trial court's judgment and remand the matter for a new adjudication hearing.

## I. Cunningham Received Fair Notice of a Violation of Community Supervision

"[W]ritten notice of the claimed violations of [community supervision]" is one of "the minimum requirements of due process which must be observed in community supervision revocation hearings." *Tapia v. State*, 462 S.W.3d 29, 41 (Tex. Crim. App. 2015) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). In his first point of error, Cunningham argues that the State's notice failed "to comport with due process requirements." We disagree.

The State filed separate, but identical, motions to adjudicate guilt for each count. Each motion stated,

> Defendant violated the following terms and conditions, thereof, in the following respect, to-wit:
>
> Condition 10: DO NOT POSSESS OR CONSUME ANY ALCOHOLIC BEVERAGE; nor possess or consume any controlled substance, including marijuana, as defined by the Texas Health and Safety Code; to wit: the defendant, Rickey Lloyd Cunningham[,] Jr[.] tested positive for Methamphetamines on or about the 14th day of June 2022.

Cunningham moved to quash the State's motion to adjudicate guilt because "there [was] no allegation that [Cunningham] possessed or consumed [methamphetamine] while on probation." At a hearing, Cunningham argued that simply testing positive for methamphetamine four days after being placed on community supervision was insufficient and that the State would be required to show that Cunningham consumed the drug after being placed on community supervision. After hearing that argument, the trial court denied the motion to quash.

"Before revoking his deferred adjudication community supervision and proceeding to adjudication, due process required, at a minimum, that [Cunningham] receive written notice that fully informed him which terms of his community supervision the State was alleging he breached

3

and the conduct allegedly constituting the breach." *Hammack v. State*, 466 S.W.3d 302, 306 (Tex. App.—Texarkana 2015, no pet.) (citing *Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. ref'd)). "Nevertheless, the notice requirements in the revocation context are not nearly as stringent as those required for an indictment." *Id.* at 307 (citing *Chacon v. State*, 558 S.W.2d 874, 876 (Tex. Crim. App. 1977)). "All that is required is that the motion to revoke fully and clearly set forth the bases on which the State seeks revocation so that the accused and his counsel have notice." *Id.* (citing *Leyva v. State*, 552 S.W.2d 158, 162 (Tex. Crim. App. 1977)).

Here, we find that the State's motion to adjudicate guilt was sufficient to inform Cunningham of the allegation that he violated Condition 10 of the terms and conditions of his community supervision, which stated:    "<u>DO NOT CONSUME OR POSSESS THE FOLLOWING:</u> alcoholic beverages, unlawful controlled substances, narcotics, dangerous drugs, marijuana, mood/mind altering drugs." Cunningham's brief admits that "[t]he conditions made clear that Cunningham was obligated to refrain from using illegal drugs during the period of community supervision." The State's motion also alleged that Cunningham violated this condition by testing positive for methamphetamine. While not the picture of clarity, it is obvious that the State alleged that Cunningham violated Condition 10 by using methamphetamine after he was placed on community supervision. Cunningham's arguments at the hearing on the motion to quash showed that Cunningham was not surprised by the allegation, "was given fair notice by the motion to [adjudicate guilt,] and was therefore afforded the real opportunity to

4

prepare a defense without surprise." *Pierce v. State*, 113 S.W.3d 431, 442 (Tex. App.—Texarkana 2003, pet. ref'd). As a result, we overrule Cunningham's first point of error.

## II. Sufficient Evidence Supports the Trial Court's Decision to Adjudicate Guilt

Next, Cunningham questions the sufficiency of the evidence supporting the trial court's decision to adjudicate guilt.

### A. Standard of Review

At an adjudication hearing, "[t]he State must prove by a preponderance of the evidence that a defendant violated the terms [and conditions of community supervision]." *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). Proof by a preponderance of evidence as to any one of the alleged violations of the conditions of community supervision is sufficient to support a trial court's decision to revoke community supervision and adjudicate guilt. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *see Marsh v. State*, 343 S.W.3d 475, 479 (Tex. App.—Texarkana 2011, pet. ref'd) (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980)).

"The determination to proceed with an adjudication of guilt on the original charge is reviewable in the same manner as a revocation hearing . . . ." TEX. CODE CRIM. PROC. ANN. art. 42A.108(b). "We review the trial court's decision to revoke community supervision for an abuse of discretion." *Davidson v. State*, 422 S.W.3d 750, 756 (Tex. App.—Texarkana 2013, pet. ref'd) (citing *Meyer v. State*, 366 S.W.3d 728, 729 (Tex. App.—Texarkana 2012, no pet.)). In our determination, we are "permitted to consider all evidence in the trial-court record, whether admissible or inadmissible." *Velez v. State*, No. 01-13-00337-CR, 2014 WL 4783268, at *2

(Tex. App.—Houston [1st Dist.] Sept. 25, 2014, pet. ref'd) (mem. op., not designated for publication) (quoting *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006)). At the hearing, "the trial court is the sole trier of the fact[s]" and "determines the credibility of the witnesses and the weight to be given their testimony." *In re T.R.S.*, 115 S.W.3d 318, 321 (Tex. App.—Texarkana 2003, no pet.). A trial court's decision to revoke community supervision and to proceed with adjudication is examined "in the light most favorable to the trial court's [judgment]." *Id.*; *Davidson*, 422 S.W.3d at 756.

### B. The Evidence

At the adjudication hearing, Elena Allen, the lead director of the community supervision department, testified that she supervised Alyssa Marcum, who was Cunningham's community supervision officer (CSO). Allen said that Cunningham's intake was completed by Marcum, who explained the terms and conditions of community supervision to Cunningham on June 10, 2022. Allen testified that individuals on community supervision are given an opportunity to tell their CSO if they have taken any controlled substance before being placed on community supervision. Over a confrontation objection, Allen testified about Marcum's notes, which indicated that Cunningham claimed he "would be clean" on a subsequent drug test.

Reading from Marcum's report, Allen testified that Cunningham's preliminary urinalysis testing on June 14 was positive for methamphetamine, and the specimen "[wa]s sent to the lab[oratory] for confirmation" after Cunningham initially denied using the drug. According to Allen, Marcum's notes showed that Cunningham first said that he was just in the company of people smoking methamphetamine before he was placed on community supervision, but

6

Cunningham later told Marcum that he used the drug on June 9. Allen said that that statement prompted further questioning from Marcum because Cunningham told her that he would be able to pass a drug test on June 10. Reading from a laboratory report, Allen testified that Cunningham "was positive . . . with a quantitative value of 343 nanograms for the amphetamine[], and methamphetamine[], 422 nanograms." During cross-examination, Allen admitted that she could not tell on what date Cunningham used the methamphetamine.

Amanda Culbertson, Cunningham's expert witness, testified that a person could test positive for methamphetamine in a urinalysis "for as long as nine days after consuming" and, as a result, there was "no way to determine" when Cunningham last used methamphetamine based on the results of the laboratory tests. Culbertson also testified that she considered the quantitative value of methamphetamine in Cunningham's urine to be a low level, "slightly above the -- the cutoffs."

In his own defense, Cunningham testified that he had a methamphetamine addiction, last used the drug on June 9, and lied to his CSO on June 10 when he said he would be able to test negative for drugs.

### C. Analysis

Proof of the State's allegation, by a preponderance of the evidence, was sufficient to support the trial court's decision to adjudicate guilt. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980). Here, the trial court heard evidence that Cunningham told Marcum that he would be able to pass a drug test on June 10. Although Cunningham said he had lied to Marcum, the trial court was free to disbelieve his self-serving testimony. Instead, as fact-

7

finder, the trial court could conclude that Cunningham told the truth on June 10, succumbed to his addiction, and used methamphetamine while on community supervision.[1]  As a result, we find the evidence sufficient to support the decision to adjudicate guilt and overrule Cunningham's second point of error.

### III.     Cunningham Was Harmed by a Denial of His Right to Confrontation

When Allen was asked what Marcum did during the June 10 intake, Cunningham's counsel lodged an objection, stating "[N]ot having Ms. Marcum here denies us our right to confront and cross-examine witnesses against us in this case under the federal and state constitution."  The State responded that Allen, "as supervisor[], ha[d] knowledge of all of the events that [were] documented in Ms. Marcum's file."  The trial court overruled Cunningham's objection but granted him a running objection to Allen's testimony.  Marcum's file was not introduced into evidence.  Instead, over the confrontation objection, Allen continued to testify about the contents of Marcum's file.  On appeal, Cunningham argues that the trial court erred by allowing Allen's testimony.

### A.     Standard of Review

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)).  "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'"  *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App.

---

[1]Because Culbertson testified that she could not determine when Cunningham last used methamphetamine, the trial court was free to disregard her testimony.

8

2008)). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

**B.     There is a Split of Authority on Whether the Sixth Amendment's Confrontation Clause Applies to Adjudication and Revocation Hearings**

In his appellate brief, Cunningham argues that the trial court's ruling to admit Allen's testimony "violated [his] Sixth Amendment right to confront witnesses against him." As both parties note, there is currently a split of authority on whether the Confrontation Clause applies to adjudication and revocation hearings. Because this Court has not decided the issue, Cunningham's appeal presents a matter of first impression. To inform our decision, we discuss the history leading to the split decisions among our sister courts.

"The Confrontation Clause of the Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .'" *Woodall v. State*, 336 S.W.3d 634, 641 (Tex. Crim. App. 2011) (quoting U.S. CONST. amend. VI). "Consistent with the Confrontation Clause guarantee, a testimonial hearsay statement may be admitted in evidence against a defendant 'only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.'" *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (quoting *Crawford v.*

*Washington*, 541 U.S. 36, 59 (2004)).[2]  Despite the notion that an accused's liberty interest is at issue in adjudication and revocation hearings, the phrase "criminal prosecutions" in the Sixth Amendment has caused much debate about whether the protections of the Confrontation Clause and *Crawford*[3] apply during those hearings.

In 1971, the Texas Court of Criminal Appeals determined that "[a] probation revocation hearing is not an adversarial proceeding, a civil action, or a criminal prosecution[;] instead, it is administrative in nature, a means of protecting society and rehabilitating lawbreakers." *Hill v. State*, 480 S.W.2d 200, 202–03 (Tex. Crim. App. 1971) (op. on reh'g) (citations omitted).  In 1973, the United States Supreme Court wrote that "[p]robation revocation, like parole revocation, is not a stage of a criminal prosecution." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)).  Citing to (1) the Confrontation Clause's language that it applies to "criminal prosecutions," (2) the legal principle that adjudication and revocation hearings are administrative in nature, which was overturned in *Ex parte Doan* as discussed below, and (3) the language from *Scarpelli* and *Morrisey*, our sister courts routinely found that the Confrontation Clause and, consequently, *Crawford* did not apply in those hearings.  *See Wisser v. State*, 350 S.W.3d 161, 164 (Tex. App.—San Antonio 2011, no pet.); *Norman v. State*, No. 13-10-00017-CR, 2011 WL 2732673, at *3 (Tex. App.—Corpus Christi–Edinburg Jul. 14, 2011, no pet.) (mem. op., not designated for publication); *Mauro v. State*, 235 S.W.3d 374 (Tex. App.—Eastland 2007, pet. ref'd); *Trevino v. State*, 218 S.W.3d 234

[2]"[T]he *Crawford* rule reflects the Framers' preferred mechanism (cross-examination) for ensuring that inaccurate out-of-court testimonial statements are not used to convict an accused." *Whorton v. Bockting*, 549 U.S. 406, 418 (2007).

[3]*Crawford v. Washington*, 541 U.S. 36 (2004).

(Tex. App.—Houston [14th Dist.] 2007, no pet.); *Smart v. State*, 153 S.W.3d 118, 121 (Tex. App.—Beaumont 2004, pet. ref'd).

The split among our sister courts was created after the Texas Court of Criminal Appeals (CCA) examined *Scarpelli* and *Morrissey* in its 2012 decision in *Ex parte Doan*, 369 S.W.3d 205 (Tex. Crim. App. 2012). In *Ex parte Doan*, the CCA explained that prior decisions labeling revocation proceedings as administrative in nature were the "result of confusion about federal law." *Id.* at 208. The CCA noted that *Scarpelli*'s description of federal revocation hearings bore little resemblance to the corresponding Texas procedure. In *Scarpelli*, the United States Supreme Court noted

> that a probation-revocation hearing in an administrative agency is unlike
>
> > [a] criminal trial, [in which] the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights . . . . In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer with the orientation [toward rehabilitation]; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation or parole.

*Ex parte Doan*, 369 S.W.3d at 210 (second and third alterations in original) (quoting *Scarpelli*, 411 U.S. at 789). In noting the differences in Texas procedure, the CCA wrote,

> In Texas, the State is represented by a prosecutor, the defendant does have a right to counsel, the hearing is before the judge, formal rules of evidence do apply, and there may be appeal directly to a court of appeals. They are conducted entirely within the judicial branch. The Rules of Evidence and the exclusionary rule to bar illegally seized evidence apply fully in a Texas probation revocation hearing. Indeed, aside from the burden of proof required to prove a community-supervision violation (preponderance of the evidence, which is lower than the

> burden of proof beyond a reasonable doubt that is required to prove a new
> criminal offense), there are few procedural differences between a Texas criminal
> trial and a Texas community-supervision revocation proceeding.

*Id.* (footnotes omitted) (citations omitted).  As a result, *Ex parte Doan* held that "[c]ommunity supervision revocation proceedings . . . are judicial proceedings, to be governed by the rules established to govern judicial proceedings." *Id.* at 212.

After *Ex parte Doan*, several appellate courts have reexamined the issue with mixed results.  The Houston 14th District and the Corpus Christi courts reversed course and found that the Confrontation Clause applied to adjudication and revocation proceedings.  *Hughes v. State*, 651 S.W.3d 461, 468 (Tex. App.—Houston [14th Dist.] 2022, pet. granted) (holding that the Confrontation Clause does apply to revocation proceedings); *Perez v. State*, No. 13-14-00300-CR, 2015 WL 4234236, at *1 n.2 (Tex. App.—Corpus Christi–Edinburg July 9, 2015, no pet.) (mem. op., not designated for publication) ("[I]f the Rules of Evidence and exclusionary rule apply to community supervision proceedings, so should the United States Constitution."). However, the majority of appellate courts deciding the issue after *Ex parte Doan* have found that the Confrontation Clause is inapplicable to adjudication and revocation hearings because *Ex parte* Doan "did not hold that they constitute a phase of 'criminal prosecution' under the Sixth Amendment." *Guillory v. State*, 652 S.W.3d 923, 927 (Tex. App.—Eastland 2022, pet. filed); *see Dupas v. State*, No. 07-22-00117-CR, 2022 WL 5052714, at *1–2 (Tex. App.— Amarillo Oct. 4, 2022, pet. filed) (mem. op., not designated for publication) (applying the law of the transferor court); *Flores v. State*, No. 02-21-00028-CR, 2022 WL 3097287, at *8 (Tex. App.—Fort Worth Aug. 4, 2022, pet. ref'd) (mem. op., not designated for publication); *White v.*

*State*, No. 02-21-00059-CR, 2022 WL 623450, at *6 (Tex. App.—Fort Worth Mar. 3, 2022, no pet.) (mem. op., not designated for publication); *Olabode v. State*, 575 S.W.3d 878, 881 (Tex. App.—Dallas 2019, pet. ref'd) ("By its own terms, the Confrontation Clause applies only to criminal prosecutions, and a probation revocation, whether it follows 'regular' probation or deferred adjudication probation, is not a stage of criminal prosecutions.").

To date, the CCA has not resolved the split among our sister courts on this issue. *See Inman v. State*, No. PD-0251-22, 2023 WL 3495573, at *1 (Tex. Crim. App. May 17, 2023) (per curiam) (noting that the CCA "granted review of the Confrontation Clause issue" but concluded the "decision to grant review was improvident").

**C.      Cunningham Had the Right to Confront the Key Witness Against Him**

After reviewing the rationale of our sister courts on this issue, we conclude that the Confrontation Clause applied to Cunningham's adjudication proceeding. In doing so, we decline to follow the majority of our sister courts, which base their reasoning on *Morrissey* and *Scarpelli*'s language that community supervision and parole revocation proceedings are not a stage of a criminal prosecution.

We begin by noting that neither *Morrissey* nor *Scarpelli* considered whether the right of confrontation was available in revocation and parole proceedings under the Confrontation Clause of the Sixth Amendment. *Morrissey*, 408 U.S. at 477; *Scarpelli*, 411 U.S. at 782. Instead, both cases found that, under the federal system, the "minimum requirements of due process" under the Fourteenth Amendment included the right to confrontation in both revocation and parole hearings because they could result in a loss of liberty. *Scarpelli*, 411 U.S. at 786 (quoting

13

*Morrissey*, 408 U.S. at 489). To use these cases to deny the right to confrontation in Texas adjudication and revocation proceedings under the Sixth Amendment simply because *Scarpelli* and *Morrissey* employed the language that federal revocations are not criminal prosecutions seems incongruous with the CCA's explanation in *Ex parte Doan* that "there are few procedural differences between a Texas criminal trial and a Texas community-supervision revocation proceeding." *Ex parte Doan*, 369 S.W.3d at 210.

Here, the State was represented by a prosecutor in a hearing before a judge where the rules of evidence applied. Notwithstanding the fact that Cunningham had pled guilty and signed the typical plea paperwork applicable to the underlying offense, the end result of the proceeding was a conviction and sentence for the underlying offense that resulted in a loss of Cunningham's liberty. As far back as 1968, Judge Jack Onion noted, "[I]t would be difficult for any student of the law to conclude that [Texas] revocation hearings are not criminal proceedings 'where substantial rights of an accused may be affected.'" *Crawford v. State*, 435 S.W.2d 148, 151 (Tex. Crim. App. 1968) (Onion, J., dissenting).

*Morrissey* noted that "[t]he [defendant] is not the only one who has a stake in his conditional liberty. Society has a stake in whatever may be the chance of restoring him to normal and useful life within the law."[4] *Morrissey*, 408 U.S. at 484. Our consideration of societal interests leads us to be unpersuaded by our sister court's arguments that *Doan* conclusively established that adjudication and revocation hearings are not criminal prosecutions

---

[4]Notwithstanding the conditional nature of "[t]he liberty of a parolee," *Morrissey* noted that the interest at stake "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Morrissey*, 408 U.S. at 482.

14

because they used the term "judicial proceedings" to describe them. *Doan*, 369 S.W.3d at 212. This is especially so where the CCA has already decided that there is a Sixth Amendment right to counsel in adjudication hearings even though the express terms of the Sixth Amendment say that right applies only to criminal prosecutions. *Parker v. State*, 545 S.W.2d 151, 155 (Tex. Crim. App. 1977). In doing so, the CCA noted that it had previously determined that "revocation proceedings cannot be isolated from the context of the criminal process" and referred to them as criminal prosecutions. *Id.* (quoting *Crawford*, 435 S.W.2d at 151). After examining the facts of this case, in light of *Ex parte Doan*, we find that Cunningham's adjudication hearing was a part of the criminal prosecution.[5]

Moreover, "[t]he central issue to be determined in reviewing a trial court's exercise of discretion in a community supervision revocation case is whether the defendant was afforded due process of law." *Tapia*, 462 S.W.3d at 41 (citing *Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012)). We find that Cunningham's trial objection and briefing fairly subsumes a due process issue. "[A] party need not spout 'magic words' or recite a specific statute to make a valid objection." *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). Instead, "[a]ll a party has to do . . . is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.* (quoting *Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992)). Cunningham's objection clearly informed the trial court that he sought

---

[5]*Marzek v. State*, No. 06-10-00087-CR, 2011 WL 238347, at *1 (Tex. App.—Texarkana Jan. 25, 2011, no pet.) (mem. op., not designated for publication) (applying the Confrontation Clause to a revocation proceeding); *see Galloway v. State*, No. 06-13-00157-CR, 2014 WL 2129525, at *1 n.3 (Tex. App.—Texarkana May 22, 2014, no pet.) (mem. op., not designated for publication) (suggesting that, after *Ex parte Doan*, the Confrontation Clause applies to revocation proceedings).

to exclude Allen's testimony about his CSO's notes on confrontation grounds. His brief mentions *Scarpelli*, the Fourteenth Amendment, and *Pointer v. Texas*, in which the United States Supreme Court said, "[W]e have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law." *Pointer v. Texas*, 380 U.S. 400, 405 (1965). As a result, we find that Cunningham has preserved a due process issue and, based on *Scarpelli* and *Morrissey*, conclude that Cunningham was entitled to confront the witnesses against him.[6]

## D.    Cunningham's Right to Confrontation Was Violated

The admission of a testimonial, out-of-court statement from a declarant who does not appear at trial violates the Confrontation Clause unless the declarant was unavailable to testify at trial and the defendant had "a prior opportunity for cross-examination." *Davis v. Washington*, 547 U.S. 813, 821 (2006); *Crawford v. Washington*, 541 U.S. 36, 68 (2004). We first determine whether the complained-of statements were testimonial.

"The primary focus in determining whether a hearsay statement is 'testimonial' is upon the objective purpose of the interview or interrogation, not upon the declarant's expectations." *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (quoting *Davis*, 547 U.S. at 822–23). "Generally speaking, a hearsay statement is 'testimonial' when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* (quoting *Davis*, 547 U.S. at 822–23). "In such a situation, the person offering information is literally

---

[6]"In Texas, the procedure for revoking probation affords a probationer greater safeguards than those required by [*Scarpelli*] and *Morrissey*." *Tapia*, 462 S.W.3d at 42.

16

bearing testimony." *Id.* "[S]tatements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" are also considered testimonial. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) (quoting *Wall v. State*, 184 S.W.3d 730, 735 (Tex. Crim. App. 2005)).

Here, even though the State represented that Allen, as Marcum's supervisor, had knowledge of the events in Marcum's file, nothing showed that she had personal knowledge of the contents of the file, and counsel obtained a running Confrontation Clause objection to all of Allen's testimony. From Marcum's file, Allen testified that, after Marcum explained that drug use would be a ground for revocation, Cunningham said he would be able to pass a drug test. Allen testified that Marcum's notes said Cunningham told her he "would be clean" on a subsequent drug test. From Marcum's notes, Allen also testified about Cunningham's statements to Marcum attempting to explain the reasons for the positive drug test, which showed that he had "changed his story."

Allen testified about those out-of-court statements offered for the truth of the matter asserted. TEX. R. EVID. 801(d). Cunningham's statements to his CSO were made as a result of questioning from an arm of law enforcement to establish past events potentially relevant to a revocation hearing that would result in his criminal conviction. The statements were made under circumstances that would lead an objective witness to believe they would be used at a revocation hearing. We find that Allen's testimony about Marcum's account of the statements Cunningham gave her included testimonial hearsay. *See Pickins v. State*, No. 02-17-00050-CR, 2018 WL 3468359, at *2–3 (Tex. App.—Fort Worth July 19, 2018, no pet.) (mem. op., not designated for

17

publication) (finding that community supervision officer's testimony based on statements in community supervision records constituted testimonial hearsay).

Allen also testified about Marcum's notes, which said that a preliminary drug test administered by an unidentified male employee of the community supervision department was positive.[7] Allen also testified about the laboratory result of Cunningham's urinalysis, which was admitted through Allen over objection. "The admission of a lab report created solely by a non-testifying analyst, without calling that analyst to sponsor it, violates the Confrontation Clause." *Paredes v. State*, 462 S.W.3d 510, 517 (Tex. Crim. App. 2015); *see Burch v. State*, 401 S.W.3d 634, 637 (Tex. Crim. App. 2013) (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 665 (2011)).

Consequently, we find that Cunningham's right to confrontation was violated. To avoid violating Cunningham's right to confrontation, there must have been some evidence showing that Marcum and the laboratory analyst were unavailable to testify and that Cunningham had a prior opportunity for cross-examination. Here, the State showed neither.

### E.    Cunningham Suffered Constitutional Harm

Our harm analysis is governed by Rule 44.2(a) of the Texas Rules of Appellate Procedure, which requires us to reverse unless convinced "beyond a reasonable doubt that the error did not contribute" to the revocation of Cunningham's community supervision and the adjudication of his guilt. TEX. R. APP. P. 44.2(a); *Crayton v. State*, 485 S.W.3d 488, 505 (Tex. App.—Texarkana 2016, no pet.). In making our determination, we view the entire record and consider the following factors:

---

[7]Allen testified that this preliminary test must have been administered by an unidentified male employee of the community supervision department.

18

"(1) the importance of the [complained-of] evidence to the State's case; (2) whether the . . . evidence was cumulative of other evidence; (3) the presence or absence of other evidence corroborating or contradicting the [complained-of] evidence, . . . ; (4) the overall strength of the State's case"; and (5) any other factor in the record that affects the probable impact of the error.

*Crayton*, 485 S.W.3d at 505 (alterations in original) (quoting *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007)).

Here, we find that Cunningham was harmed by the admission of Allen's testimony. The State had the burden of establishing that Cunningham used methamphetamine after June 10. Its evidence on that issue was not strong. The statements in Marcum's file that were the substance of counsel's Confrontation Clause objection and the objected-to laboratory report were the sole pieces of evidence comprising the State's case-in-chief against Cunningham. While Cunningham did agree that he told Marcum he could pass a drug test on June 10, the results from the preliminary drug test in Marcum's file and the laboratory report were not cumulative of any other evidence.

The record shows that Marcum was the key witness in the State's case, but Cunningham had no opportunity to confront her. In short, the evidence should have been excluded under the Confrontation Clause and, as a matter of due process, was absolutely critical to the State's case. Without it, the evidence would have been insufficient to establish that Cunningham violated a term and condition of community supervision by ingesting methamphetamine after he was placed on community supervision, and Cunningham would have had no obligation to make any defense at the hearing. Given these facts, we are not convinced "beyond a reasonable doubt that

19

the error did not contribute" to revocation of Cunningham's community supervision and the adjudication of his guilt. TEX. R. APP. P. 44.2(a).

Because Cunningham suffered constitutional harm, we sustain Cunningham's last point of error.

## IV.     Conclusion

We reverse the trial court's judgment and remand the matter to the trial court for a new adjudication hearing.

Charles van Cleef
Justice

Date Submitted:     May 25, 2023
Date Decided:     June 22, 2023

Publish

20